**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| Brandon C., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 3:20-cv-50367 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Brandon C. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying him social security benefits.[2] For the reasons set forth below, Plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the case is reversed and remanded for further proceedings consistent with this opinion.

### I. Background

On September 1, 2013, Plaintiff attempted suicide by cutting his right wrist. R. 382, 386. While in the emergency room, Plaintiff told the medical professionals and staff that the injury was a result of him being "drunk and stupid." R. 384. Nonetheless, a psychiatric consultation was ordered, and the psychiatrist concluded that Plaintiff had attempted suicide, citing his anxiety, restlessness, and psychosocial stressors. R. 386, 388. Plaintiff underwent surgery to repair his wrist on September 2, 2013. R. 394. Following the surgery, he attended occupational therapy for his hand between September and November 2013. R. 372, 377. He also attended a psychiatry

---

[1] Kilolo Kijakazi has been substituted for Andrew Marshall Saul. Fed. R. Civ. P. 25(d).
[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c).

appointment on December 10, 2013. R. 550. However, the administrative record contains no other medical records for the next three-and-a-half years, until July 2017. *See* R. 460.

Plaintiff testified that he did not seek and was resistant to treatment for his mental health or wrist injury because he was in a "dark place" and wanted to die. R. 52, 53, 60, 104. He also cited these reasons to a mental health professional at Rosecrance. R. 574. Plaintiff testified that the worst part of his mental health crisis period began around his September 2013 suicide attempt and lasted through the summer of 2014. R. 53-54. Plaintiff testified that, during this timeframe, he attempted suicide on several other occasions using different methods. R. 71-74; *see* R. 565.

Plaintiff testified that his two childhood friends moved into his home in 2016 to help save his home from foreclosure, R. 54-55, and that they are the ones who were able to convince him to seek medical help, R. 97, 278. Plaintiff began seeing a licensed clinical social worker at Crusader Clinic in September 2017, who diagnosed him with depression and anxiety. R. 457-58. That same month, the provider at Crusader Clinic also began encouraging Plaintiff to seek more comprehensive mental health treatment through Rosecrance. R. 432, 440, 446, 718, 728. Plaintiff finally began treatment through Rosecrance over a year later, in October 2018, where he was diagnosed with Major Depressive Disorder, Generalized Anxiety Disorder, and Avoidant Personality Disorder. R. 563, 574, 592. Since beginning mental health treatment in 2017, Plaintiff's providers have increased and changed his medications on a number of occasions, R. 425, 429, 437, 699, 713, 733. As of the date of the hearing, Plaintiff was taking three medications for his mental health conditions. R. 83.

On November 2, 2017, Plaintiff filed an application for disability benefits and, on August 22, 2019, he filed an application for supplemental security income ("SSI"). In both applications, he alleged disability beginning March 1, 2014, and his date last insured ("DLI") was December

31, 2016. He was 39 years old at the time he filed his disability benefits application and 41 at the time he filed his SSI application. His claim was denied initially and upon reconsideration. Thereafter, he filed a written request for a hearing. The hearing was held on September 6, 2019.

Following the hearing, an administrative law judge ("ALJ") issued a decision on October 30, 2019, finding that Plaintiff was not disabled. R. 147-160. The ALJ found that Plaintiff had the following severe impairments: anxiety; avoidant personality disorder; and depressive disorder. R. 149. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. R. 151. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: no more than frequent handling, fingering, feeling, or gross and fine manipulation with the dominant right upper extremity; the ability to learn, understand, and carry out simple and detailed work instructions, make simple work-related decisions, and tolerate occasional changes in a routine work setting; no high production-rate pace requirements; no more than brief, superficial, and occasional interaction with co-workers and the general public as required by the work; no team or tandem work; customary or usual supervision found in unskilled work environments; sustain any necessary concentration, persistence or pace in 2 hour increments throughout the typical workday. R. 153. The ALJ determined that Plaintiff could not perform his past relevant work, but there were other jobs that existed in significant numbers in the national economy that he could perform, including picker, automobile detailer, and industrial cleaner. R. 158-59. Plaintiff appealed the ALJ's decision to this Court on September 28, 2020.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If

supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (citations omitted). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

### III. Discussion

Plaintiff argues that: (1) the state agency physicians failed to properly obtain and review the evidence; (2) the ALJ disregarded evidence that supports a finding of severe mental and physical impairments, including Plaintiff's explanation for failing to continue treatment for his wrist or seek mental health treatment; and (3) the ALJ played doctor and failed to obtain a medical expert at the hearing. For the reasons discussed below, the Court agrees that remand is required because the ALJ's subjective symptoms analysis relied on an improper evaluation of Plaintiff's explanation for his lack of treatment, the ALJ played doctor, and the ALJ cherry-picked evidence.

### A. Explanation for lack of treatment

During the hearing, the ALJ asked Plaintiff at least seven times why he did not seek treatment for his mental health or his wrist between the alleged onset date ("AOD") and the end of 2016. *See* R. 52-53, 60, 68, 69, 74, 103-04. Each time, Plaintiff explained that his mental health prevented him from doing so, including that: he was in a dark place and planning to end his life; he resisted people's attempts to get him help because he felt worthless and like a failure; he did

4

not reach out to the medical provider who prescribed him medication when he ran out because he wanted to die; and he stopped going to physical therapy for his hand because he felt like the therapist was judging him for what he did to himself. *Id.*

The ALJ determined that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with a finding of disability. R. 156. Specifically with respect to his mental health condition, the ALJ offered several reasons, one of which was that: "While [Plaintiff] claims that he did not pursue treatment during this time because he did not think he would survive it, the undersigned is unable to effectively assess this time period in the absence of medical records." *Id.* Plaintiff asserts that the fact that his mental health was so serious as to prevent him from receiving treatment is itself evidence that supports a finding that his condition was severe prior to his DLI. Pl.'s Br. at 9-10, Dkt. 14. Plaintiff argues that the ALJ was required to provide a logical bridge as to why his testimony about his reasons for not seeking that treatment were not credible, but the ALJ failed to do so. Pl.'s Reply at 1-2, Dkt. 25. The Commissioner responds that Plaintiff's statements of symptoms alone are not enough to establish disability, and that the ALJ was not required to uncritically accept Plaintiff's assertions. Def.'s Resp. at 6, Dkt. 19.

Plaintiff is correct that when a claimant does not seek treatment consistent with the degree of his complaints, an ALJ may not find that individual's symptoms inconsistent with the evidence in the record without first considering the possible reasons for failing to seek treatment. *See* Social Security Ruling 16-3p, 2016 WL 1119029 (Mar. 16, 2016), at *8. Rather, the ALJ must make a determination about whether the lack of treatment is justified and develop the record accordingly. *See Myles v. Astrue*, 582 F.3d 672 (7th Cir. 2009) (remanding in part because the ALJ failed to consider whether the plaintiff's explanations for why she did not keep up with her treatment were

valid). The Seventh Circuit has repeatedly admonished ALJs that fail to acknowledge that mental illness may prevent an individual from submitting to treatment because, often, it is precisely the claimant's disabling symptoms that are the primary reason for the lack of or infrequent treatment. *See Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011); *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011); *Bauer v. Astrue*, 532 F.3d 606 (7th Cir. 2008); *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006); *see also Lewis v. Colvin*, 14 CV 50195, 2016 WL 4530338, at *5 (N.D. Ill. Aug. 30, 2016); *Hawkins v. Colvin*, No. 2:13-CV-456-JEM, 2015 WL 1486795, at *6 (N.D. Ind. Mar. 31, 2015).

Here, although the ALJ asked Plaintiff about his reasons for not seeking treatment during the hearing, she did not provide any indication in her decision that she took that into consideration. The ALJ wrote a single sentence addressing this topic: "While [Plaintiff] claims that he did not pursue treatment during this time because he did not think he would survive it, the undersigned is unable to effectively assess this time period in the absence of medical records." R. 156. In other words, the ALJ acknowledges that Plaintiff's explanation for the lack of treatment records is because Plaintiff's mental health symptoms prevented him from seeking treatment but insists that she is unable to evaluate Plaintiff's explanation because of the lack of treatment records. This is the *exact* type of circular reasoning that ALJs are supposed to avoid. *See Swiatkowski v. Saul*, No. 18-CV-1101, 2020 WL 583151, at *3 (E.D. Wis. Feb. 6, 2020) ("But in using Swiatkowski's sporadic treatment to discount her allegations of disabling [anxiety] symptoms, he ignores the fact that Swiatkowski's disabling symptoms were the primary reason her treatment was sporadic."). As such, the ALJ's assessment lacks the requisite logical bridge connecting Plaintiff's reasons for not seeking treatment to his credibility, which constitutes impermissible error. *See Fields v. Berryhill*, No. 2:16-CV-24-JEM, 2017 WL 1075120, at *3 (N.D. Ind. Mar. 21, 2017); *Nordlund v. Colvin*,

6

No. 14-CV-480-JDP, 2015 WL 6509382, at *2 (W.D. Wis. Oct. 28, 2015). Remand is warranted on this basis.

The Commissioner is also correct that Plaintiff's statements of his symptoms alone are not enough to establish disability. However, it is well-established in this circuit that an ALJ should evaluate evidence that predates a claimant's AOD and/or postdates the DLI to the extent that it sheds light on the nature and severity of the claimant's condition during the relevant period. *See Bjornson v. Astrue*, 671 F.3d 640, 642 (7th Cir. 2012) (rejecting government's argument that post-DLI evidence is irrelevant); *Million v. Astrue*, 260 F. App'x 918, 922 (7th Cir. 2008) (unpublished) (explaining that post-DLI medical records were "relevant only to the degree that they shed light on [the claimant's] impairments and disabilities from the relevant insured period"); *Johnson v. Sullivan*, 915 F.2d 1575, at *3 (7th Cir. 1990) ("[T]he ALJ should consider the record as a whole, including pre-onset evidence (particularly relating to a degenerative condition) and post-onset evidence."); *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984) ("There can be no doubt that medical evidence from a time period subsequent to a certain period is relevant to a determination of claimant's condition during that period."); *see also Jesus P. v. Saul*, No. 19 C 2271, 2020 WL 3268515, at *5 (N.D. Ill. June 17, 2020); *Hurdis v. Colvin*, No. 12-CV-00601-WMC, 2014 WL 6982298 (W.D. Wis. Dec. 10, 2014).

In this case, there is evidence following Plaintiff's DLI that could conceivably be material to his medical issues during the relevant period. For instance, Plaintiff began seeking mental health treatment about six months after his DLI and, in the following years, he often talked about his life and mental health symptoms during the relevant period. *See, e.g.,* R. 457, 460, 560, 564-65, 568, 569, 591, 604, 611, 615, 621, 629, 630, 636, 638. This would not be an unusual amount of time to include in an evaluation of Plaintiff's condition and functioning during the relevant period given

that ALJs often consider evidence several years before the AOD and/or after the DLI when evaluating claimants' conditions. *See Shelah H. v. Kijakazi*, No. 19 C 4781, 2022 WL 1028832 (N.D. Ill. Apr. 6, 2022) (ALJ considered treatment records that began three months after the DLI and continued for several years); *Jesus P.*, 2020 WL 3268515 at *5 (ALJ considered evidence up to approximately three years before and after the relevant period).

While the ALJ states in her opinion that she considered the entire record, R. 153, her written decision indicates otherwise. She generally mentions evidence from outside the relevant period in her summary of the record and briefly at other points in her decision yet does not rely on or reject *any* of that evidence in her evaluation of Plaintiff's subjective symptoms. Instead, the ALJ's subjective symptoms evaluation appears to disregard any relevant evidence that existed before the AOD and after the DLI. Although the Court is remanding for other reasons, on remand, the ALJ is directed to evaluate whether the record evidence prior to the AOD and following the DLI "sheds light on the nature and severity" of Plaintiff's condition during the relevant period and, if so, include that in her analysis of Plaintiff's subjective symptoms.

### B. Medical expert and playing doctor

Plaintiff argues that the ALJ failed to call a medical expert at the hearing and played doctor with respect to her finding that Plaintiff's symptoms did not reach the level of disability. Pl.'s Br. at 10-13, Dkt. 14. With respect to Plaintiff's argument that the ALJ played doctor, this Court agrees. The ALJ wrote the following as another basis for finding Plaintiff's subjective symptoms inconsistent with a finding of disability:

> [I]t seems likely that, rather than his difficulties being related to an underlying organic mental health condition, his difficulties may be related to substance use and/or abuse. As noted above, the claimant stated that he drank 12 or 13 beers prior to cutting his wrist. During the psychiatric evaluation, Dr. Patel diagnosed the claimant with alcohol abuse, and counseled the claimant to either totally abstain from consumption or to participate in "low-risk" drinking behavior. Concluding the

> report, Dr. Patel found that the claimant was "safe to go home, [with a] low risk of
> future [suicide] attempt *as long as patient follows alcohol recommendations*"
> (emphasis added). Immediately after this most serious incident, the claimant was
> found to be safe for discharge as long as he remained sober. The undersigned finds
> this far from indicative of significant mental health limitation.

R. 156 (internal citations omitted) (emphasis in original). The problem with this analysis is

twofold. First, the ALJ cherry-picked information from within the psychiatric consultation note.

The ALJ's discussion focused primarily on Dr. Patel's diagnosis of alcohol abuse and his

recommendation that Plaintiff abstain from alcohol consumption as reasons to support her

conclusion that Plaintiff had a substance abuse problem rather than a mental health condition. *See*

R. 388. Yet, the ALJ failed to mention that Dr. Patel also diagnosed Plaintiff with anxiety disorder

and recommended that Plaintiff be connected with a therapist at discharge. *See id*. Additionally,

the ALJ neglected to include that Dr. Patel wrote at length about Plaintiff's mental health

symptoms and the psychosocial factors contributing to his anxiety and the suicide attempt. *See* R.

386-88. All of this ignored information undermines the ALJ's "finding" that Dr. Patel's psychiatric

evaluation is "far from indicative of significant mental health limitation," *see* R. 156, and suggests

that she cherry-picked evidence to fit her own medical conclusion. *See Reid C. v. Saul*, 19 CV

50101, 2020 WL 6747001, at *3 (N.D. Ill. Nov. 17, 2020) (it is improper for an ALJ to "play up"

the role of alcohol by repeatedly discounting evidence in support of a claimant's mental health

limitations because the claimant used alcohol); *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir.

2018) ("ALJs are not permitted to cherry-pick evidence from the record to support their

conclusions, without engaging with the evidence that weighs against their findings.").

Next, the ALJ's conclusion that Plaintiff's "difficulties" were related to substance use

and/or abuse rather than a mental health condition is based on improper speculation. Dr. Patel saw

Plaintiff on just one occasion – the ER psychiatric consultation in September 2013 – and he used

diluted language in his report when discussing Plaintiff's relationship to alcohol. *See* R. 388 (stating that Plaintiff "*likely* has some component of alcohol abuse" and there was a "*possibility* that abstinence or low-risk drinking" would improve Plaintiff's safety) (emphasis added). In other words, Dr. Patel avoided making definitive or conclusory statements about Plaintiff's relationship with alcohol. Yet, *none* of Plaintiff's mental health care providers – whom he had seen for months or even years – ever reported that Plaintiff had an alcohol or substance abuse problem instead of mental health conditions. *See Dyer v. Berryhill*, 237 F. Supp. 3d 772, 776 (N.D. Ill. 2017) (finding persuasive that no other medical professional had opined or even suggested the finding identified by the ALJ). In fact, the record reflects that Plaintiff told his treatment providers (and the ALJ at the hearing) that he does not normally drink alcohol but would drink when he felt suicidal. R. 63, 567, 591. This is an important consideration, given that research shows that co-occurring anxiety/depression and alcohol use is common. *See* Joshua P. Smith & Carrie L. Randall, *Anxiety and Alcohol Use Disorders*, Alcohol Research Current Reviews, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3860396/#:~:text=Comorbid%20panic%20disor der%20with%20agoraphobia,%2C%20Smith%20and%20Book%202010) ("[P]eople with anxiety disorders attempt to alleviate negative consequences of these conditions (i.e., are negatively reinforced) by drinking alcohol to cope with their symptoms, eventually leading to the later onset of [alcohol use disorders]."); Laura Close, *Depression and Substance Abuse*, American Addiction Centers, https://americanaddictioncenters.org/treating-depression-substance-abuse ("Depression can increase the risk of chronic illness, including the disease of substance abuse. Up to a third of clinically depressed people engage in drug or alcohol abuse."). More importantly, the Seventh Circuit has criticized ALJs for not considering such situations. *See Kangail*, 454 F.3d at 629 ("bipolar disorder can precipitate substance abuse, for example as a means by which the

sufferer tries to alleviate her symptoms"); *Harlin v. Astrue*, 424 Fed. App'x 564, 568 (7th Cir. 2010) (unpublished) ("we believe that the ALJ here has not adequately disentangled the effects of Harlin's drug abuse from those of her other impairments."). The Court is not attempting to play doctor by diagnosing Plaintiff with co-occurring anxiety and alcohol use disorders. Rather, the above research and Seventh Circuit cases show that the ALJ's conclusion that alcohol abuse and mental health limitations are mutually exclusive was an inappropriate assumption without evidentiary foundation. As such, the Court concludes that the ALJ played doctor with respect to the subjective symptoms analysis. *See White ex. rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence."); *Engstrand v. Colvin*, 788 F.3d 655, 660–61 (7th Cir. 2015) (by incorrectly assuming a connection between observations without medical evidence, the ALJ was inappropriately "playing doctor"). For the reasons stated above, there is not substantial evidence to support the ALJ's evaluation of Plaintiff's mental health-related subjective symptoms. Remand is warranted on this basis.

Relatedly, with respect to the ALJ's alleged failure to call a medical expert at the hearing, the Commissioner asserts that the ALJ is not required to obtain additional medical opinions when the record contains adequate information for the ALJ to render a decision and, here, the ALJ did not find that the record was inadequate. Def.'s Resp. at 6, Dkt. 19 (citing *Britt v. Berryhill*, 889 F.3d 422, 427 (7th Cir. 2018)). However, contrary to the Commissioner's characterization, as stated in the section above, the ALJ explicitly stated that she was "unable to effectively assess this time period in the absence of medical records." R. 156. Such a statement indicates that the record did *not* contain adequate information for the ALJ to render a decision, in which case, the ALJ should have called a medical expert. *See Tasha C. v. Saul*, 18-CV-4677, 2019 WL 6877190, at \*9

(N.D. Ill. Dec. 17, 2019) ("[T]he ALJ erred when she failed to recontact Tasha's treating physicians and/or call a medical expert to assist her because the record was inadequate."); *Jirau v. Astrue*, 715 F. Supp. 2d 814, 826 (N.D. Ill. 2010) ("Unless required to develop an inadequate record or resolve ambiguities, the decision to call a medical expert and/or order a consultative examination is within the ALJ's discretion."). Confusingly, the ALJ later states that she found "sufficient evidence to make the findings contained in [her] decision," R. 157, so it is unclear what the ALJ truly meant. To the extent that the ALJ meant to say that the medical records *within* the relevant period were inadequate, this Court has already ordered the ALJ to consider evidence outside of the relevant period on remand. Notably, when there are no records from the relevant period, ALJs often call at least one medical expert at the hearing to try to opine on the relevant period based on records falling before and after that period. *See Shelah H. v. Kijakazi*, No. 19 C 4781, 2022 WL 1028832 (N.D. Ill. Apr. 6, 2022); *Gasko v. Berryhill*, No. 16 CV 8102, 2017 WL 1833191 (N.D. Ill. May 8, 2017); *Guranovich v. Astrue*, No. 09 C 3167, 2011 WL 686358 (N.D. Ill. Feb. 15, 2011), *aff'd*, 465 F. App'x 541 (7th Cir. 2012); *Williams v. Astrue*, 788 F. Supp. 2d 769 (N.D. Ill. 2011). Further, the ALJ's conclusion that Plaintiff's suicide attempt was the result of alcohol abuse rather than any mental health conditions was made without any apparent attempt on the part of the ALJ to "disentangle" the effects of a claimant's substance use from those of their other impairments. *See Harlin*, 424 Fed. App'x at 568; *see also Reid C.*, 2020 WL 6747001, at *4 (when considering the relationship between anxiety and alcohol use, the ALJ must make an effort to disentangle the two conditions). For these reasons, the ALJ is directed to call a medical expert after re-evaluating the evidence in this record and any new evidence presented to opine on Plaintiff's functioning during the relevant period and to assist the ALJ in disentangling the effects of Plaintiff's alcohol use and mental health issues.

### C. Conflicting reports

Though not addressed by either of the parties, the Court finds it important to note another issue with the ALJ's decision. Another reason the ALJ gave for finding that Plaintiff's subjective symptoms were inconsistent with a finding of disability was that he offered "conflicting reports" of his motivation and condition. R. 156. As an example, the ALJ wrote: "Although [Plaintiff] subsequently talked about his 2013 suicide attempt, while in the hospital he repeatedly denied being suicidal or having suicidal ideation, and blamed his injury on being drunk at the time, having reportedly drunk 12 or 13 beers." R. 156. The ALJ does not elaborate on this point or provide an explanation of how this observation relates to her conclusion that Plaintiff's symptoms were inconsistent with a finding of disability. As such, it is unclear whether the ALJ was saying that she did not believe Plaintiff actually attempted suicide or that the "conflicting report" about the 2013 suicide attempt undermines Plaintiff's credibility more generally. If she meant the former, it is unlikely that her analysis would be supported by substantial evidence given that every medical professional in the record – including the ER psychiatrist whose evaluation the ALJ relied on earlier – concluded that Plaintiff did attempt suicide. However, regardless of the message the ALJ was trying to convey, the lack of a logical bridge from the evidence to her conclusion warrants remand. *Butler*, 4 F.4th at 501 (an ALJ must provide a logical bridge from the evidence to her conclusion).

Because this case will be remanded, the Court finds it unnecessary to address each of Plaintiff's specific arguments relating to the evidence in the record because it is possible that the ALJ and counsel can address and rectify the alleged errors on remand, especially if the ALJ calls a medical expert at a new hearing. Plaintiff should raise any of his concerns with the ALJ on

13

remand, both in a pre-hearing brief and at the administrative hearing. Failure to explicitly raise these issues may result in a waiver if this case is again appealed to this Court.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the case is reversed and remanded for further proceedings consistent with this opinion.

Date: June 22, 2022       By: 

Lisa A. Jensen
United States Magistrate Judge